UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEREMY P. GALLANT,
    Plaintiff,

vs.

WARDEN RONALD ERDOS, *et al.*,
    Defendants.

Case No. 1:19-cv-466

Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

    Plaintiff, an inmate at the Toledo Correctional Institution (ToCI) in Toledo, Ohio, has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. Plaintiff alleges that several Southern Ohio Correctional Facility (SOCF) employees and/or correctional officers[1] ignored his serious mental health complaints, responded with excessive force when he threatened to hang himself, and then attempted to cover-up the incident. (Doc. 1-1). Also before the Court is plaintiff's "Petition for Leave to Proceed in Excess and Exempt of Restriction." (Doc. 1, at PageID 1). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis*.

    Plaintiff's "Petition for Leave to Proceed in Excess and Exempt of Restriction" (Doc. 1, at PageID 1) is **GRANTED** to the extent that he seeks to file his complaint, which exceeds the 20-page limit, but is **DENIED** in all other respects.

    This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious,

---

[1]Specifically, plaintiff names the following defendants: Warden Ronald Erdos, Major Warren, Deputy Warden Cool, Captain C. Distel, Lt. P. Frazie, Lt. B. Dyer (also spelled Dire in the complaint), Officer C. Scott, Officer T. Parish, Officer J. Rardin, Officer A. Cooper, Officer M. Ervin, Mental Health Administrator S. Salyers (also spelled Salyer in the complaint), Lt. R. Setty, Recreational Officer D. Taylor, Inspector L. Mahlman (also spelled Malhman in the complaint), and twelve "Jon/Jane Doe" defendants.

fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

## I. Screening of Complaint

### A. Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A

complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## B.    The Complaint

Plaintiff alleges that he suffers from severe mental illness, which has been exacerbated by his prolonged stay in solitary confinement. (Doc. 1-1, at PageID 27). He alleges that on the

afternoon of July 11, 2017, defendant Taylor arrived at plaintiff's cell to take him to recreation. (Doc. 1-1, at PageID 27).  At that time, plaintiff complained to Taylor of having suicidal thoughts. (Doc. 1-1, at PageID 27).  Plaintiff claims that Taylor allowed plaintiff to go to recreation despite his mental health complaints. (Doc. 1-1, at PageID 27).  Taylor allegedly placed plaintiff in an outside recreation cage with seven other prisoners and left them unattended. (Doc. 1-1, at PageID 27-28).  Plaintiff alleges that he then climbed on top of a basketball backboard and, using two ropes that he had in his possession, threatened to hang himself. (Doc. 1-1, at PageID 27-28).  Plaintiff alleges that the other inmates in the recreation cage tried to summon officers, but no one was around. (Doc. 1-1, at PageID 28).  Plaintiff alleges that when Taylor eventually returned, plaintiff requested to speak with mental health staff. (Doc. 1-1, at PageID 28).  According to plaintiff, Taylor became angry, made threats, screamed obscenities, and encouraged plaintiff to jump. (Doc. 1-1, at PageID 28).  Taylor then allegedly left again and returned with unidentified officers, who allegedly taunted and insulted plaintiff. (Doc. 1, at PageID 28).

Plaintiff alleges that defendant Frazie then arrived to mediate the situation but only made halfhearted attempts to negotiate with plaintiff. (Doc. 1, at PageID 28).  Plaintiff asserts that defendant Salyers also arrived but left after refusing "to engage in any genuine mediations." (Doc. 1-1, at PageID 28).

According to plaintiff, defendant Distel then dispatched defendant Dyer and a Special Response Team (SRT) consisting of defendants Scott, Parish, Rardin, Cooper, and Ervin. (Doc. 1-1, at PageID 28-29).  Plaintiff claims that Dyer was armed with a $CO_2$ powered firearm. (Doc. 1-1, at PageID 28).  Plaintiff alleges that he tried to surrender when Dyer entered the recreation cage, but Dyer, "in a retaliatory state of mind," shot plaintiff multiple

4

times with the CO2 firearm, causing plaintiff to "slip, fall, and hang" from the backboard. (Doc. 1-1, at PageID 29, 33). Plaintiff alleges that the officers involved conspired to cover-up their actions by stating that plaintiff jumped from the backboard and was holding on. (Doc. 1-1, at PageID 29). Plaintiff claims that Dyer and members of the SRT then "cut[] him down," body-slammed him to the ground, and hit and kicked him, even though he was not resisting. (Doc. 1-1, at PageID 30-31). Plaintiff asserts that Dyer repeatedly yelled "stop resisting" as a "smoke screen" to justify beating plaintiff. (Doc. 1-1, at PageID 30-31). Plaintiff also alleges that an unidentified member of the SRT grabbed plaintiff's genitals, causing plaintiff to experience agonizing pain and defecate on himself. (Doc. 1-1, at PageID 30).

Plaintiff alleges that after the incident he heard an unidentified person say, "Clean him up and make it look like a[n] accident." (Doc. 1-1, at PageID 31). Plaintiff also alleges that as a result of the injuries he sustained during the incident he had to be taken by "life flight" to the hospital, where he remained for a week. (Doc. 1-1, at PageID 30-31). Plaintiff states that he continues to suffer from migraines and loss of hearing. (Doc. 1-1, at PageID 30).

Plaintiff alleges that "[l]ater on in 2017, both the major and deputy warden confided in [plaintiff], stating that they personally instructed the 5 man team to rough [plaintiff] up, for all the shit [he had] given them over the years and that this was their way of getting even." (Doc. 101, at PageID 30).

Plaintiff also alleges that defendants Setty, Mahlman, and "all other defendants unlawfully conspired to cover up and revise the actual incident, according to fabricated internal reports." (Doc. 1-1, at PageID 31). However, plaintiff clarifies his allegations against Mahlman by stating that "her sole contribution" to the July 11, 2017 incident was a grievance restriction that she purportedly imposed on plaintiff that day. (Doc. 1-1, at PageID 37).

Based on these allegations, plaintiff brings the following four claims:

A.  First Amendment violations—unlawful state retaliations and reprisals. Conspired cover-up.

B.  Fourth Amendment violations—unlawful use of force/inappropriate supervision—objectively unreasonable.

C.  Eighth Amendment violations. Use of deadly force used maliciously/sadistically—deliberately indifferent to health, safety—imminent dangers and threats of harm/death—cruel and inhumane. Mental health.

D.  Fourteenth Amendment violations—Due process and liberty interest.

(Doc. 1-1, at PageID 9).

For relief, plaintiff seeks monetary, declaratory, and injunctive relief. (Doc. 1-1, at PageID 39).

**C.      Analysis**

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff's Eighth Amendment claims against defendants Taylor, Frazie, Salyers, Distel, Dyer, Scott, Parish, Rardin, Cooper, Ervin, Warren, and Cool are deserving of further development and may proceed at this juncture. Plaintiff may also proceed at this juncture with his claims that defendants Dyer, Scott, Parish, Rardin, Cooper, Ervin, the unknown individual who allegedly ordered plaintiff to be cleaned up, and Setty conspired to conceal and cover up the alleged July 11, 2017 incident. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). However, plaintiff's remaining claims should be dismissed for failure to state a claim upon which relief may be granted.

First, the complaint should be dismissed as to all defendants in their official capacities to the extent that plaintiff seeks money damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*,

6

506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not

constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.

*See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline*

*Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to

actions where the state is not a named party, but where the action is essentially one for the

recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of*

*Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would,

in reality, be a way of pleading the action against the entity of which defendants are agents.

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in

their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S.

58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d

282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n

official-capacity suit against a state official is deemed to be a suit against the state and is thus

barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore,

all of the named defendants are immune from suit in their official capacities to the extent that

plaintiff seeks monetary damages.

Plaintiff's claims should also be dismissed against defendant Warden Ronald Erdos.

Plaintiff does not allege any personal involvement on the Warden's part. It is well-settled that

the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto

supervisory personnel. *See, e.g., Wingo v. Tennessee Dept. of Corr.,* 499 F. App'x 453, 455 (6th

Cir. 2012) (citing *Polk Cty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory

personnel liable, a plaintiff must allege that the supervisors were somehow personally involved

in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged

7

unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th

Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,*

605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir.

2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the

officials "at least implicitly authorized, approved or knowingly acquiesced in the

unconstitutional conduct of the offending officers"). Plaintiff's conclusory allegations that the

Warden allowed the alleged unconstitutional conduct to occur and failed to properly train his

staff (Doc. 1-1, at PageID 32) are insufficient to establish supervisory liability. *Twombly*, 550

U.S. at 557.

Next, plaintiff's First Amendment retaliation claim fails to state a claim upon which relief

may be granted and should be dismissed. Plaintiff alleges only that an adverse action has been

taken against him. Plaintiff fails to allege, other than through conclusions (*see* Doc. 1-1, at

PageID 30, 33), that he engaged in any constitutionally protected conduct or that such conduct

prompted the adverse action allegedly taken against him. *Twombly*, 550 U.S. at 557, *see also*

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (setting forth the elements of a First

Amendment retaliation claim). Plaintiff's First Amendment retaliation claim should be

dismissed.

Further, although the Court has allowed plaintiff's conspiracy claims to proceed at this

juncture against defendants Dyer, Scott, Parish, Rardin, Cooper, Ervin, the unknown individual

who allegedly ordered plaintiff to be cleaned up, and Setty, plaintiff's conspiracy claims against

the remaining defendants (*see* Doc. 1-1, at PageID 33) are subject to dismissal. Conspiracy

claims "must be pled with some specificity: vague and conclusory allegations that are

unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370

F.3d 580, 599 (6th Cir. 2004). Plaintiff has failed to allege facts in support of his conspiracy

claims from which the Court can reasonably infer that the remaining defendants conspired to

violate plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 678.

Likewise, plaintiff has failed to state a Fourth Amendment claim against defendants.

Plaintiff's Fourth Amendment claim is based on allegations of excessive force and failure to

supervise. (*See* Doc. 1-1, at PageID 9). "For a plaintiff who was a convicted prisoner at the time

of the incident, the Eighth Amendment sets the standard for an excessive force claim." *Phelps v.

Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Plaintiff was an inmate at the time of the alleged July

11, 2017 incident. Therefore, plaintiff cannot bring a Fourth Amendment excessive -force claim.

Further, for the reasons stated above, plaintiff's supervisory liability claim fails because the

doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto

supervisory personal. *See Wingo*, 499 F. App'x at 455.

Plaintiff's Fourteenth Amendment claim should also be dismissed. Plaintiff merely

alleges "due process and liberty interest." (Doc. 1-1, at PageID 9). As set forth above, a

pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555. Further, to the extent that plaintiff's due

process claims are based on allegations that defendants violated internal regulations and policies.

(*see* Doc. 1-1, at PageID 15) (listing the Ohio Department of Rehabilitation and Correction

policies and administrative rules that defendants allegedly violated), the failure of prison officials

to follow internal regulations and/or policies is not in and of itself a constitutional violation. *See,

e.g., Davis v. Berghuis*, No. 1:12–CV–258, 2012 WL 3116360, at *10 (W.D. Mich. July 31,

2012) ("Indeed, Plaintiff's claim of "misconduct" appears to rest on the fact that Defendants did

not comply with prison regulations, but that fact is not sufficient to state a claim on its own.");

*Haight v. Thompson*, No. 5:11CV–P118–R, 2011 WL 4473143 at *3 (W.D. Ky. Sept. 26, 2011)

("A prison official's failure to follow internal rules and regulations does not alone state a

constitutional violation ..."). Nor can plaintiff state a substantive due process claim against

defendants. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment

'provides an explicit textual source of constitutional protection' against a particular sort of

government behavior, 'that Amendment, not the more generalized notion of 'substantive due

process,' must be the guide for analyzing these clams.'") (quoting *Graham v. Connor*, 490 U.S.

386, 395 (1989)).

To the extent that plaintiff alleges that defendant Setty failed to investigate the incident,

this claim should be dismissed. "There is not statutory or common law right, much less a

constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007);

*see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011).

Similarly, to the extent that plaintiff complains about the grievance process at SOCF or that

defendant Mahlman placed restrictions on his use of the prison grievance procedures, such

claims should be dismissed. State prisoners do not have a constitutionally protected right to

prison grievance procedures. *Walker v. Michigan Dept. of Corr.,* 128 F. App'x 441, 445 (6th

Cir.2005); *see also Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002) ("[T]here is no

inherent constitutional right to an effective prison grievance procedure."); *Antonelli v. Sheahan,*

81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to

a liberty interest protected by the Due Process Clause."). Nor are prison officials obligated to

respond to an inmate's grievance in a way that satisfies the inmate. *Overhold v. Unibase Data

Entry, Inc.,* 221 F.3d 1335, *3 (6th Cir. 2000). Further, "[c]ourts in this circuit have consistently

upheld procedures which modify or restrict the ability of prisoners (who have been deemed

abusive grievance filers) to file unfettered grievances." *Odom v. Helton*, No. CIV.A. 12-80,

2013 WL 4012889, at \*7 (E.D. Ky. Aug. 6, 2013) (citing *Hartsfield v. Mayer*, No. 95-1411, 76

F.3d 378 (table), 1996 WL 43541, at \*2 (6th Cir. Feb. 1, 1996) (unpublished order)).

Additionally, the Court can infer no actionable claim under the ADA or the RA in

plaintiff's complaint. Title II of the ADA[2] and § 504 of the RA are substantially similar in their

requirements to state a claim. *See Babcock v. Mich.*, 812 F.3d 531, 540 (6th Cir. 2016) ("Our

analysis of [RA] claims 'roughly parallels' ADA claims because the statutes contain similar

language and are 'quite similar in purpose and scope.'") (quoting *McPherson v. Mich. High Sch.

Athletic Ass'n, Inc.*, 119 F.3d 453, 459-60 (6th Cir. 1997)). Under Title II of the ADA, "[n]o

qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The term "public entity"

is defined, in relevant part, as "any State or local government." 42 U.S.C. § 12131(1)(A).

Similarly, § 504 of the RA protects any "otherwise qualified individual with a disability" from

"be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to

discrimination" under specified programs or activities "solely by reason of her or his disability."

29 U.S.C. § 794(a). The RA applies to programs or activities receiving federal financial

assistance. *See id.* Plaintiff does not identify a service, program, or activity from which he was

excluded on the basis of a disability. In the absence of any such allegation, plaintiff's complaint

---

[2]The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Although plaintiff does not specify under which Title of the ADA he brings his claim, his ADA claim arises, if at all, under Title II of the statute.

fails to state a claim upon which relief may be granted under the ADA or RA, and those claims should be dismissed.

As to plaintiff's claim that defendant Taylor and unidentified officers verbally threatened and mocked plaintiff, this claim should be dismissed. It is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo*, 499 F. App'x at 455 (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that "verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim"); *Montgomery v. Harper,* No. 5:14CV-P38-R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) (and Sixth Circuit cases cited therein) (dismissing an inmate's § 1983 claim alleging "verbal harassment" and "abusive language" by a state correctional officer). *Cf. Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 119 (3d Cir. 2013) (and Sixth, Fifth and Tenth Circuit cases cited therein) ("mere threatening language does not amount to a constitutional violation").

Finally, to the extent that plaintiff seeks to challenge his placement in solitary confinement (*see* Doc. 1-1, at PageID 27), plaintiff's claim should be dismissed. As an initial matter, if plaintiff is complaining about his current housing at ToCI, he has not explained how defendants, who are SOCF employees and/or correctional officers, are proper defendants to such a claim. Further, his allegations regarding his stay in solitary confinement are merely conclusory and thus insufficient to state a claim to relief. (*See* Doc. 1-1, at PageID 27). Moreover, plaintiff has not shown that his claim, which appears to allege a mental injury, is actionable under § 1983. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional

injury suffered while in custody without a prior showing of physical injury or the commission

of a sexual act."). Additionally, this claim is unrelated to the July 11, 2017 incident and thus

must be brought, if at all, in a separate action. *See* Fed. R. Civ. P. 20(a)(2). *See also George v.*

*Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against defendants belong in

different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit

produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison

Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner

may file without prepayment of the required fees.").

Accordingly, in sum, the complaint should be dismissed with the exception of

plaintiff's Eighth Amendment claims against defendants Taylor, Frazie, Salyers, Distel, Dyer,

Scott, Parish, Rardin, Cooper, Ervin, Warren, and Cool, and plaintiff's conspiracy claims

against defendants Dyer, Scott, Parish, Rardin, Cooper, Ervin, the unknown individual who

allegedly ordered plaintiff to be cleaned up, and Setty.

However, plaintiff has failed to provide service copies of the complaint[3] so that service

may be issued on defendants. Plaintiff is **ORDERED** to submit a service copy of the

complaint for defendants Taylor, Frazie, Salyers, Distel, Dyer, Scott, Parish, Rardin, Cooper,

Ervin, Warren, Cool, and Setty so that service of process may be made in this case **within**

---

[3]Plaintiff's constitutional right of access to the courts does not include unlimited free photocopying services. *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003); *Bell Bey v. Toombs*, No. 93-2405, 1994 WL 105900, at *2 (6th Cir. Mar. 28, 1994) (citing *Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989); *Wanninger v. Davenport*, 697 F.2d 992, 994 (11th Cir. 1983) (per curiam)). *Cf. Sweeting v. Noble Corr. Inst.*, No. 2:13cv941, 2014 WL 1342872, at *2 (S.D. Ohio Apr. 3, 2014). Furthermore, although plaintiff has been granted the right to proceed *in forma pauperis*, he is not entitled under the *in forma pauperis* statute to free copies of documents that he generated and previously filed with the Court. *See Anderson v. Gillis*, 236 F. App'x 738, 739 (3rd Cir. 2007); *see also Martin v. Aramark Food Corp.*, No. 2:15cv1112, 2015 WL 3755944, at *4 (S.D. Ohio June 16, 2015); *Brown v. Voorhies*, No. 2:07cv13, 2007 WL 2071907, at *1 (S.D. Ohio July 17, 2007). This Court's local rules permit plaintiff to submit handwritten, legible copies of his complaint. *See* S.D. Ohio Local Civ. R. 5.1(a). Plaintiff has provided United States Marshal and summons forms for the defendants.

**thirty (30) days** of the date of this order.

The Clerk of Court is **DIRECTED** to provide the plaintiff with a copy of his complaint so that he can make the requisite number of service copies. Upon receipt of the service copies of the complaint, the Court shall order service of process by the United States Marshal in this case.

Plaintiff is advised that failure to comply with this Order may result in the dismissal of this case for want of prosecution.

## IT IS THEREFORE RECOMMENDED THAT:

The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's Eighth Amendment claims against defendants Taylor, Frazie, Salyers, Distel, Dyer, Scott, Parish, Rardin, Cooper, Ervin, Warren, and Cool, and his conspiracy claims against defendants Dyer, Scott, Parish, Rardin, Cooper, Ervin, the unknown individual who allegedly ordered plaintiff to be cleaned up, and Setty.

## IT IS THEREFORE ORDERED THAT:

1. Within **thirty (30) days** of receipt of this Order, plaintiff is **ORDERED** to submit service copies of the complaint for defendants Taylor, Frazie, Salyers, Distel, Dyer, Scott, Parish, Rardin, Cooper, Ervin, Warren, Cool, and Setty. The Clerk of Court is **DIRECTED** to send to plaintiff a copy of the complaint for this purpose. Upon receipt of the service copies of the complaint, the Court shall order service of process by the United States Marshal in this case.

Further, before service may be issued upon the unidentified correctional officer, plaintiff must file a motion to issue service setting forth the identity of the unidentified defendant. Plaintiff is therefore **ORDERED** to file a motion to issue service, including United States

14

Marshal and summons forms, if and when plaintiff discovers the identity of the unnamed

defendant through discovery.  Plaintiff is advised that no service will be issued on the unnamed

defendants unless plaintiff complies with this Order.

 2.  Plaintiff shall inform the Court promptly of any changes in his address which may

occur during the pendency of this lawsuit.

Date: 8/27/19

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEREMY P. GALLANT,                          Case No. 1:19-466
    Plaintiff,

                            Dlott, J.
  vs.                       Litkovitz, M.J.

WARDEN RONALD ERDOS, et al.,
    Defendants.
                        **NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).