## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JEREMY P. GALLANT,**

      **Plaintiff,**

      **v.**

**RONALD ERDOS, et al.,**

      **Defendants.**

         **Case No. 1:19-cv-466**
         **JUDGE DOUGLAS R. COLE**
         **Magistrate Judge Litkovitz**

### OPINION AND ORDER

This cause is before the Court on: (1) the Magistrate Judge's August 28, 2019, Order and Report and Recommendation (the "First R&R) (Doc. 6), in which the Magistrate Judge, in furtherance of her sua sponte screening obligations under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), recommends dismissal of certain of Plaintiff Jeremy Gallant's claims; (2) Gallant's Objections to that R&R (Doc. 14; Doc. 15); (3) the Magistrate Judge's January 12, 2021, R&R (the "Second R&R") (Doc. 36), in which the Magistrate Judge recommends granting Defendants' Motion for Summary Judgment (Doc. 24), denying Gallant's Motion for Sanctions (Doc. 29), and certifying that any appeal from this Order would be not in good faith; and (4) Gallant's Objections to that R&R (Doc. 37).

For the foregoing reasons, the Court **ADOPTS** in full the Magistrate's First R&R (Doc. 6), and **ADOPTS IN PART** and **REJECTS IN PART** the Second R&R (Doc. 36). Specifically, the Court **REJECTS** the Second R&R's recommendation that the Court certify that any appeal would not be taken in good faith. Accordingly, the

Court **OVERRULES** Plaintiff's Objections to both R&Rs (Doc. 14; Doc. 15; Doc. 37). The Court therefore **GRANTS** Defendants' Motion for Summary Judgment (Doc. 24), and **DENIES** Plaintiff's Motion for Sanctions (Doc. 29), as moot.

## BACKGROUND

Plaintiff Jeremy Gallant, an inmate at the Toledo Correctional Institution in Toledo, Ohio, filed this pro se civil rights action in forma pauperis alleging violations of 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. Gallant's complaint centers around an incident at Southern Ohio Correctional Facility ("SOCF") in 2017. Gallant claims that on July 11 of that year, multiple SOCF prison staff ignored his serious mental health concerns, responded with excessive force when he threatened to hang himself, and afterward attempted to cover up the incident. He asserts that, in doing so, prison staff violated the above-cited statutes and the Constitution. He filed this action on June 13, 2019.

Soon thereafter, Magistrate Judge Litkovitz conducted a sua sponte review of the complaint pursuant to the Prison Litigation Reform Act of 1995. (First R&R, Doc. 6, #114–15). Based on that review, the Magistrate Judge recommended dismissing all claims save for Gallant's Eighth Amendment claims against certain defendants and the corresponding conspiracy claim against a subset of those defendants. (*Id.* at #127).

Gallant timely filed objections (Doc. 14; Doc. 15) to the First R&R and, soon after, the case was reassigned to the undersigned. The litigation progressed as to the claims not recommended for dismissal, and the remaining Defendants filed a Motion for Summary Judgment on the remaining claims on August 26, 2020. (Mot. for Summ. Judgment, Doc. 24). The Magistrate Judge issued a second Report and Recommendation, in which she recommends granting summary judgment to the Defendants. (Second R&R, Doc. 36). Gallant timely objected to the Second R&R about two weeks later. (*See generally* Objection/Appeal Filing to Report & Recommendation ("Objections to Second R&R"), Doc. 37).

The Court will recount the allegations in the Complaint before addressing the various other procedural developments in this matter.

Gallant alleges that on the afternoon of July 11, 2017, Defendant Taylor, a corrections officer, arrived at Gallant's cell to take him to recreation. (Compl., Doc. 5, #101). Gallant alleges that he was then suffering a "mental health crisis" and was having "suicidal thoughts and intentions." (*Id.*). Gallant alleges he expressed these difficulties—at least generally—to prison staff, including Defendant Taylor, but that he was disregarded. (*Id.*). Taylor then took Gallant to an outside recreation cage and left Gallant there "unattended" for some time, although there were seven other inmates in the recreation area. (*Id.* at #102). Gallant alleges that Taylor "permitted" him to take two "home made ropes/noose" with him to recreation. (*Id.* at #101). According to Gallant, Taylor's "deliberate indifference" and "inappropriate supervision[]" allowed Gallant to "full fill [his] suicidal intentions." (*Id.* at #102).

3

To that end, Gallant climbed onto the backboard of a basketball hoop in the recreation area and fastened one end of each rope to the cage and one end of each to his neck. (*Id.*). At this point the other inmates attempted to summon officers, but "none were around." (*Id.*). Gallant alleges that, when Defendant Taylor returned, Gallant pleaded to speak with a mental health staff member, but Defendant Taylor allegedly became hostile, made threats, and "even enticed [Gallant] to jump and kill [himself]." (*Id.*).

Gallant alleges that certain unidentified officers then arrived. He claims those officers mocked, taunted, and insulted him in a way that was "traumatizing." (*Id.*). Defendant Frazie arrived to mediate the situation but, according to Gallant, made only "halfhearted" attempts to negotiate. (*Id.*). Defendant Salyers, a prison mental health administrator, then arrived, but also refused to engage in any "genuine mediation," departing shortly thereafter. (*Id.*). Gallant claims that Defendant Distel then dispatched Defendant Dyer and a "Special Response Team" ("SRT") consisting of Defendants Scott, Parish, Rardin, Cooper, and Ervin. (*Id.* at #102–03). Gallant alleges that Dyer was armed with a $CO_2$-powered firearm, and that Dyer shot plaintiff multiple times, despite Gallant's attempts to surrender. (*Id.*). This barrage caused Gallant to "slip, fall, and hang" from the basketball hoop. (*Id.* at #103).

At this point, Gallant claims the five-person SRT was "clawing" at his suspended body, before finally cutting him down and body-slamming him onto the concrete. (*Id.* at #104). Defendant Dyer began yelling "stop resisting," but Gallant claims he never offered physical resistance—instead, Dyer's shouts were used as a

"smoke screen" to justify punching, hitting, and kicking Gallant. (*Id.* at #104, 105). He alleges that one member of the SRT grabbed his genitals so hard that it caused him to defecate out of pain. (*Id.* at #104). After the incident, Gallant heard an unidentified voice ordering others to "[c]lean him up and make it look like a[n] accident." (*Id.* at #105). The resulting injuries required a "life flight" to Ohio State, where Gallant says he remained for a week. (*Id.*). He claims he still suffers from ailments as a result of the incident, including recurring migraines and hearing loss. (*Id.* at #104).

Gallant alleges that the officers involved conspired to cover up their actions by stating that plaintiff jumped from the backboard, rather than slipping, as he contends. (*Id.*). He goes on to state that "[l]ater on in 2017, both [Warren] and [Cool] confided in [Gallant], stating that they personally instructed the 5 man team to rough [him] up, for all the shit [he had] given them over the years and that this was their way of getting even." (*Id.*).

Gallant alleges that Warden Erdos "concur[red] to and approv[ed]" the use of force, and that Erdos failed to ensure proper supervision and training of the prison staff. (*Id.* at #106). Inspector Mahlman, meanwhile, "conceive[d] a[n] unjustified and meritless state grievance restriction" to "obstruct [Gallant's] ability" to exhaust his state remedies. (*Id.* at #111).

The principal problem with Gallant's claims, as discussed below, is that virtually all of the interactions that form the basis of his complaint were captured on videotape. And that videotape tells a different story from Gallant's account above.

5

## PROCEDURAL HISTORY

### A.    The Magistrate Judge's Order and First R&R.

The Magistrate Judge conducted an initial review of Gallant's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii) and 1915A(b)(1). In that complaint, Gallant states he is asserting claims under the "First, Fourth, Eighth, and Fourteenth Amendments" against a host of defendants. (Doc. 5, #83). It further appears that he is asserting his claims against each defendant in both their individual and official capacities. (*Id.* at #87 (stating that "all parties listed are to be carried as defendants and held in official, individual and investigative capacities")).

The Magistrate Judge's review of that complaint culminated in a recommendation of dismissal for failure to state a claim of all Gallant's claims except his Eight Amendment claim against defendants Taylor, Frazie, Salyers, Distel, Dyer, Scott, Parish, Rardin, Cooper, Ervin, Warren, and Cool, and his conspiracy claims against Dyer, Scott, Parish, Rardin, Cooper, Ervin, Setty, and the unknown individual who allegedly ordered plaintiff to be "cleaned up." (First R&R, Doc. 6, #127). And, as to those remaining claims, the First R&R recommends dismissal to the extent that Gallant bring those claims against Defendants in their official capacities and seeks monetary relief. (*Id.*).

Starting with this last point first, the First R&R explains that official-capacity claims against state defendants seeking money damages fail as a matter of law because "[a]bsent an express waiver, a state is immune from damage suits under the Eleventh Amendment." (*Id.* at #119–20 (citing *P.R. Aqueduct & Sewer Auth. V.*

6

*Metcalf & Eddy*, 506 U.S. 139 (1993))). The State of Ohio has not waived that immunity. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985). And, although Gallant does not specifically name the State of Ohio, his suit against state prison employees in their official capacities amounts to "a way of pleading the action against the entity of which defendants are agents," i.e., the State of Ohio. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, the First R&R says, Eleventh Amendment immunity applies, requiring dismissal of those claims.

The First R&R further recommends dismissal of Gallant's claims against Warden Ronald Erdos because, according to the R&R, Gallant failed to allege that Erdos had any personal involvement in the matters at hand. (First R&R, Doc. 6, #120). And *respondeat superior* does not apply to § 1983 lawsuits. (*Id.* (citing *Wingo v. Tennessee Dept. of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012))). Thus, Gallant must allege that Erdos himself had done something wrong—for example, adopting an unconstitutional policy, pursuant to which the guards were acting at the time—in order for liability to attach. And, in that regard, the First R&R found that Gallant's conclusory allegations that the Warden "allowed" the conduct to occur and failed to properly train his staff were insufficient as a matter of law to meet his burden at the pleading stage. (*Id.* at #121).

The First R&R also recommends dismissing Gallant's First Amendment retaliation claims, as such claims require allegations that the plaintiff had engaged in constitutionally protected conduct, and that such conduct prompted the adverse

action allegedly taken against him. (*Id.*). Gallant failed to factually allege either element.

As for the conspiracy claims, the First R&R recommends that they should be allowed to go forward as to some defendants. As to other defendants, though, the First R&R recommended dismissal because Gallant failed to include any more than vague and conclusory allegations as to those defendants. (*Id.* at #121–22).

Less importantly for the purposes of this Opinion, the First R&R also recommends dismissal of Gallant's Fourth Amendment excessive force claim, his Fourteenth Amendment claim, his substantive due process claim, his claim against Defendant Setty for failure to investigate, his claims under the Americans with Disabilities Act and Rehabilitation Act, his claim that unidentified officers "verbally threatened and mocked him," and any challenge he sought to bring against his placement in solitary confinement. (*Id.* at #122–26).

## B. The Magistrate Judge's Second R&R.

The remaining Defendants, Taylor, Frazie, Salyers, Distel, Dyer, Scott, Parish, Rardin, Cooper, Ervin, Warren, and Cool, filed a Motion for Summary Judgment on the claims remaining against them on August 26, 2020. (Doc. 24). In their motion, Defendants argued that Gallant could not show that the pain inflicted by Defendants was sufficiently serious; that he could not show Defendants were acting with a sufficiently culpable state of mind; that he could not show deliberate indifference; that he could not show a constitutional violation as predicate to conspiracy claim; and that, in any event, Defendants were entitled to qualified immunity. (*See generally*

*id.*). In support, they offered an authenticated use of force investigation report (Doc. 24-2), Gallant's medical records (Doc. 24-4), and, importantly, three DVDs containing the video recordings from the day of the incident, which they filed manually.

In his opposition, Gallant points to eight segments of video and seems to assert that these create a genuine dispute of material fact. (Doc. 32, #683). He also sets aside a portion of his opposition to decry the extensive "falsifications stipulated and stated in the internal reports" submitted by the defense. (*Id.* at #685). He further asserts that the medical records proffered by the defense were "limited in scope," revealing only "a fraction of the injuries" he sustained as a result of the incident. (*Id.*). He argues that the defense's narrative of events would be "easily disproved by video recordings," and that Defendants' use of force was excessive because he had verbally expressed his willingness to surrender. (*Id.* at #687).

The Second R&R agrees with Defendants that Gallant failed to point to any genuine dispute of material fact and, accordingly, that Defendants are entitled to judgment as a matter of law on the excessive use of force, conspiracy, and deliberate indifference claims. The Second R&R reasons that, as to most of the claims and Defendants, the video evidence blatantly refuted Gallant's version of events and no reasonable juror could have found otherwise. First, as to the excessive force claims, the Magistrate Judge found that the video evidence entirely refuted Gallant's allegations that he had tried to surrender, that the SRT had "body slammed" Gallant onto the ground, and that the SRT "unleash[ed] a brutal barrage of punches, hits, and kicks" once he was on the ground. (Second R&R, Doc. 36, #718, 719–20). The Second

9

R&R does not say whether the video demonstrably contradicted Gallant's allegation that one of the defendants grabbed his genitals so hard that he defecated on himself. But, according to the Second R&R, Sixth Circuit precedent holds that such an allegation, standing alone, is insufficient to establish an Eighth Amendment violation. (*Id.* at #720 (citing *Tuttle v. Carroll Cnty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that "female deputy 'grabbed [Plaintiff's] privates and squeezed them really hard'" during a pat-down search was "simply too subjective and vague to state an Eighth Amendment violation")).

The Second R&R also agrees with Defendants Taylor, Salyers, and Frazie that Gallant could not show they had exhibited "deliberate indifference" to his serious medical needs. (*Id.* at #726, 729). The Second R&R explains that "[a] prison official violates the Eighth Amendment 'when, among other things, [he] acts with deliberate indifference to serious medical needs of prisoners.'" (*Id.* at #725 (quoting *Broughton v. Premier Health Serv., Inc.*, 656 F. App'x 54, 56 (6th Cir. 2016))). Deliberate indifference includes both objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). Importantly, the subjective element focuses on whether the defendant knew that the plaintiff faced a substantial risk of harm and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. In the Magistrate Judge's view, Taylor was entitled to summary judgment because Gallant had not produced evidence showing that Defendant Taylor had knowledge of a sufficiently serious risk of harm to plaintiff. (Second R&R, Doc. 36, at #726–27). That is, Gallant had not pointed to a

genuine issue of material fact as to the subjective prong. Although Gallant mentioned to Taylor he was having mental health struggles, he had not specifically mentioned suicidal ideations. (*Id.*). Nor did Gallant point to any evidence that Taylor was aware of the bedsheet Gallant ultimately used in the incident. (*Id.* at #727).

As for Defendants Salyers and Frazie, the Second R&R once again turns to the video evidence, concluding it refutes any allegation that Salyers or Frazie had "disregarded" the risk of harm to Gallant. (*Id.* at #728). In contrast to Gallant's allegations that Salyers had "threaten[ed] [Gallant] with physical injuries by security [and] made no attempts to intervene on [his] behalf," the video evidence shows that Salyers offered Gallant medication and engaged him in conversation about the potential consequences of his actions. (*Id.*). Likewise, Frazie had spoken with Gallant for roughly seventeen minutes, offering to walk Gallant down to administration on two occasions. (*Id.* at #728–29). The Second R&R found that these were "reasonable measures" to address the risk of harm to Gallant, and Gallant had not offered any evidence creating a genuine dispute of material fact as to either Salyers or Frazie. (*Id.*). Therefore, according to the R&R, Salyers and Frazie are entitled to judgment as a matter of law.

Finally, as to Gallant's conspiracy claims, which of course were not susceptible to video evidence, the Second R&R agrees with Defendants that defendants Dyer, Scott, Parish, Rardin, Cooper, Ervin, Setty, Warren, and Cool are entitled to judgment as a matter of law because "[a] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional

11

injury." (*Id.* at #724 (quoting *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014))). Given the recommended dispositions as to the other constitutional claims, Gallant could not establish an underlying constitutional violation and, without this necessary predicate, his conspiracy claim was doomed.

The Second R&R also recommends denying Gallant's Motion for Sanctions (Doc. 29), which arose from Defendants' alleged failure to make the video recordings available for Gallant to review. (*Id.* at #730). In particular, the Second R&R noted that Gallant admitted, in his Response in Opposition (Doc. 32), that Gallant was "provided several opportunities to review the numerous video recordings" and had "inspected all of the available materials that defense has submitted," including the video recordings. (Doc. 36, #730 (quoting Resp., Doc. 32, #679, 681)). Thus, the Second R&R recommends denying the Motion as moot.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). That said, objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

To qualify, for review, an objection must "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). And, notwithstanding specificity, a court need not provide de novo review where the objections are frivolous or conclusory. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *Slater v. Potter*, 28 F. App'x 512, 512–13 (6th Cir. 2002).

## A.    The Dismissal Standard.

The First R&R recommended dismissal of certain of Gallant's claims. On that front, a federal court may, sua sponte, dismiss an in forma pauperis complaint if the court is satisfied that the action is frivolous or malicious. 28 USC § 1915(e)(2)(B)(i); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*, 490 U.S. at 328–29. An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims violation of a legal interest which clearly does not exist. *Id.* at 327.

Congress has also authorized sua sponte dismissal of complaints that fail to state a claim upon which relief may be granted. 28 USC §§ 1915(e)(2)(B)(ii), 1915A(b)(1). That is, a complaint must "state[] a claim for relief that is plausible,

13

when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "In other words, Plaintiffs must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that determination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is so, however, only as to factual allegations. The Court need not accept as true Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556, U.S. at 678; *Twombly*, 550 U.S. at 546–47. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## B.    The Summary Judgment Standard.

The motion under consideration in the Second R&R was Defendants' Motion for Summary Judgment. "The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *See, e.g.*, *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020

14

WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). But the non-moving party cannot defeat a motion for summary judgment merely by pointing to any factual dispute. As the Sixth Circuit has explained, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

## LAW AND ANALYSIS

### A.    Gallant's Objections to the Magistrate Judge's First Order and R&R.

Gallant's objections to the First R&R span two documents and 11 handwritten pages. (*See generally* Doc. 14; Doc. 15). Most of his objections, however, are general, conclusory, or frivolous, and therefore fail to preserve any issue for review by this Court. *See Mira*, 806 F.2d at 637; *Slater*, 28 F. App'x at 512–13. For example, Gallant repeatedly objects that the Magistrate Judge failed to recount or acknowledge all the "factual assertions" included in his Complaint, instead "revising" the Complaint in order to "suit the [R&R's] stipulated recommendations." (Doc. 14, #166). Indeed, the R&R's "very deficient recitings [sic]" of the allegations are "the main basis" for his objection. (*Id.* at #164).

In support of this assertion, Gallant points the Court to various portions of the Complaint and insists that the allegations therein "consist of constitutional violations [and] deprivations." (*Id.*; *see also id.* at #163 (directing Court to pages 18 and 19 of

the Complaint and asserting that the SRT's "unlawful attack" was "maliciously employed and intentionally committed"); *id.* at #171 (requesting the Court "make reference" to the Complaint's allegations against Erdos and asserting that they "rose to the expectations and standards [of stating a claim]").

The Court first notes that these objections are entirely conclusory (much like many of the allegations in the Complaint to begin with). They fail to point to specific factual matter which suggests error on the part of the Magistrate Judge. Indeed, Gallant's repeated references to the Complaint essentially argue that the Magistrate Judge *must* have failed to properly consider the allegations because the allegations in fact do state a claim. Gallant continues extensively in this vein, asserting that the First R&R is insufficient in that, "if [the R&R] is recommending dismissal of certain claims stated within the complaint's assertions, it would at least recognize and/or apply its disposition and determining lines of suggestive reasons to actual matters … transcribed in the verified complaint." (Obj. to First R&R, Doc. 14, #163). But an R&R need not reproduce each and every line of the Complaint. And if a general objection of the type Gallant makes were enough to require a district court to rehash every allegation, that would undermine the key role that magistrate judges play in our federal judicial system: "to assume some of the burden imposed [on the district courts] by a burgeoning caseload." *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (quoting *Chamblee v. Schweiker*, 518 F. Supp. 519, 520 (N.D. Ga. 1981)).

16

Gallant also objects to the dismissal of certain of his failure-to-investigate claims because he says that Defendant Setty's cover-up will be "revealed in discovery," and objects to the dismissal of Defendant Mahlman because Mahlman did more than just enact grievance restrictions, contrary to what the First R&R claims. (Obj. to First R&R, Doc. 14, #164–65; *but see* Compl., Doc. 5, #111 ("While Mahlman surely had a behind the scenes part in the casting and construction in the entire conspired cover up to the whole affair, her sole contribution in the unlawful event 'officially pronounced,' is the unjustified grievance restriction.")). But, as noted above, the factual allegations in the complaint itself must be sufficient, taken as true, to state a claim. More specifically, the allegations must suffice to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556, U.S. at 678; *Twombly*, 550 U.S. at 546–47. Discovery is not meant to allow Gallant to discover *whether* he has a claim, but rather to provide a process for gathering evidence to substantiate an already plausibly-stated claim. Gallant's assertions that certain defendants' "behind the scenes" actions will be laid bare in discovery, without more, do not plausibly state a claim, and thus the First R&R properly recommended dismissal, notwithstanding those speculative allegations.

Gallant also appears to argue that the Magistrate Judge misapplied the law by disregarding allegations which, in his view, should have overcome Defendants' Eleventh Amendment immunity. (*See, e.g.*, Doc. 14, #164; Doc. 15, #170 (objecting that Magistrate ignored assertions stating "policy violations which disqualify[] defendants from employing [an Eleventh Amendment] defense …")). Gallant

17

relatedly objects that the Magistrate Judge impermissibly "raised" the immunity argument on Defendants' behalf. (*Id*.).

While these objections at least provide the Court greater clarity than some of his others, they have no more legal merit. Both 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) make "seek[ing] monetary relief from a defendant who is immune from such relief" an independent ground for dismissal. And this is, at least in part, exactly what Gallant seeks. Gallant sues certain defendants in their official capacities and, though he does not clarify for every defendant the capacity in which he sues, says he seeks to hold them "collectively in all capacities charged in the unlawful use of deadly force." (Doc. 5, #112); *see also Garcia v. Lorain Cty. Ct. of Common Pleas*, No. 1:18-CV-00944, 2019 WL 1755649, at *4 (N.D. Ohio Apr. 19, 2019) ("[W]here a plaintiff does not specify the capacity in which he sued the individual defendants, 'it must be assumed that these defendants were sued in their official capacity as state employees.'") (quoting *Tweed v. Wilkinson*, 145 F.3d 1333 (6th Cir. 1998) (table)). Gallant prays for relief in the amount of $100,000 from each named defendant[1] and then an additional $500,000 from the defendants "as a class," for a total of $2,000,000. (*See id*.).

But, as the Magistrate correctly explained, it is well-settled that a state is immune from suits seeking monetary damages unless the state has waived that immunity, which Ohio has not done. (First R&R, Doc. 6, #119–20); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982) ("[W]aiver by the state

---

[1] Namely, Erdos, Warren, Cool, Distel, Dyer, Scott, Parish, Rardin, Cooper, Ervin, Frazie, Salyers, Taylor, Setty, and Mahlman.

can still occur, but only 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'") (quoting *Edelman v. Jordan*, 415 U.S. 651 (1974)). And, although Gallant does not specifically name the State of Ohio in his suit, a suit against an agent of the state in their official capacity is essentially against the state. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

Against this legal backdrop, Gallant argues that his allegations of non-compliance with prison policy somehow should have overcome this immunity. He cites no case law to support such an argument, and the Court is aware of none. There is no allegation a plaintiff could levy that would somehow "abrogate" Eleventh Amendment immunity. The ability to render a state amenable to a suit for monetary damages lies only with Congress (pursuant to § 5 of the Fourteenth Amendment) and the state itself. *See Franks v. Kentucky School for the Deaf*, 142 F.3d 360, 362–63 (6th Cir. 1998) ("Section 5 of the Fourteenth Amendment … is the only constitutional provision that the Supreme Court recognizes as granting Congress the power to abrogate the states' immunity ….").

The Court notes that Gallant's argument could be taken another way. His objection could be construed to mean that, by allegedly violating prison policy, the prison employees were not acting in their official capacity at all, and immunity therefore does not apply because "Eleventh Amendment protections only extend[] when state employees are acting as 'arms of the state.'" (Obj. to First R&R, Doc. 15, #170). But if that is Gallant's argument, it is no objection at all: the Magistrate Judge

19

allowed Gallant's plausibly-stated claims to continue against certain defendants in their individual capacities. And, contrary to Gallant's objection, by applying Eleventh Amendment immunity to the official capacity claims, the Magistrate Judge was not raising a defense on the defendants' behalf. Rather, the Magistrate was merely performing the statutorily required sua sponte screening function. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2).

Finally, Gallant requests leave to amend his Complaint. (Doc. 15, #168). However, because the Magistrate Judge sua sponte screened the Complaint and recommended dismissal of certain claims with prejudice (Doc. 6, #127), and because the Court discerns no error in the Magistrate Judge's consideration of the Complaint, the Court denies Gallant's request for leave.

The Court thus **ADOPTS** in full the Magistrate's First R&R (Doc. 6), and **OVERRULES** Plaintiff's Objections to that R&R (Doc. 14; Doc. 15). That is, the Court **DISMISSES** the Complaint (Doc. 5) **WITH PREJUDICE** as to all claims save the Eighth Amendment claims against defendants Taylor, Frazie, Salyers, Distel, Dyer, Scott, Parish, Rardin, Cooper, Ervin, Warren, and Cool, and the conspiracy claims against Dyer, Scott, Parish, Rardin, Cooper, Ervin, Setty, and the unknown individual who allegedly ordered plaintiff to be "cleaned up."

### B. Gallant's Objections to the Second R&R.

Gallant's objections to the Second R&R are, if anything, even more deficient than those to the First R&R. He begins by asserting that the Magistrate Judge "disregarded the very obvious and most apparent genuine issues of material facts."

(Doc. 37, #732). Unfortunately, though the objections continue for four pages, Gallant never elaborates on what these "obvious and most apparent" genuine issues of material fact might be. Instead, Gallant asks the Court to disregard the Defendants' "redundantly excessive manufactured and crafted discovery document," and requests the Court view the video recording of the incident, which "completely contradicts" Defendants' account. (*Id.* at #734). These objections are both general, in that they fail to point the Court to any specific "issues that are dispositive and contentious," and conclusory, in that they offer no factual support for their claims. As such, they do not preserve any issues for review by this Court. *See Miller*, 50 F.3d at 380 (citing *Howard*, 932 F.2d at 509).

Gallant also objects that the entire report was "rendered … in favor of the moving party, in direct contrast to the [Federal Rule of Civil Procedure] 56." (Doc. 37, #732). But, like his objection above, this claim that the Second R&R misapplied Federal Rule of Civil Procedure 56 is unsupported and, in any event, unfounded. Rule 56 provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is true that, in determining whether the movant is entitled to judgment as a matter of law, the court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). (This is the standard on which Gallant seems to base his objection.) And it is also true

21

that the allegations in Gallant's complaint significantly differ from the narrative offered by Defendants.

But, even accounting for *Satterfield*'s non-movant-friendly standard, these discrepancies (between Gallant's narrative and Defendants' narrative) do not create a genuine issue of material fact. That is because, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). And applying that principle here, the Magistrate Judge was not required to accept as true, for purposes of the Motion for Summary Judgment, all of the allegations in Gallant's Complaint.

The July 11 incident at the center of this Complaint was recorded, first by Defendant Frazie and then, once the SRT was assembled, by Defendant Distel. (*See* Video Recording #1; Video Recording #2). Defendants offered both recordings in support of their Motion. (*See* Second R&R, Doc. 36, #710, 712; Galloway Decl., Doc. 24-5, #649–50). Gallant, by contrast, relied primarily on the allegations in his verified Complaint to support his opposition to the Motion (*see* Second R&R, Doc. 36, #714), although he also pointed to certain portions of the video (*see* Pl. Resp., Doc. 32, #683).

While the allegations in a verified complaint "count" for summary judgment purposes, in deciding the Motion, the Magistrate Judge reviewed the recordings and found that the video evidence "blatantly contradicted" many of those allegations. (*See, e.g.*, Second R&R, Doc. 36, #719–20 ("The video evidence blatantly contradicts

plaintiff's assertions [that officers 'clawed at his suspended body' and 'body slammed his lifeless body'].") (internal brackets omitted); *id.* at #728 ("The video recordings of the incident directly refute plaintiff's allegations that defendant Salyers, the SOCF mental health administrator, ignored plaintiff's 'pleas for help.'"); *id.* at #729 ("Plaintiff's conclusory assertions are blatantly contradicted by the video evidence such that no reasonable jury could believe them.") (citing *Scott v. Harris*, 550 U.S. at 380)).

This Court has independently reviewed the video evidence and agrees with the R&R's finding that the video evidence, for the most part, blatantly contradicts Gallant's version of events. The video shows that prison staff spoke extensively with Gallant for over twenty minutes before the SRT team arrived and did not, contrary to Gallant's allegation, ignore his pleas for help. (*See generally* Video Recording #1). Once the SRT arrived, Defendant Dyer asked Gallant several times to remove the noose and warned him that, if he failed to do so, force would be used to gain his compliance. (Video Recording #2 at 0:05:40–0:06:10). Further, once Gallant fell, Officers are seen clearly attempting to hold up his suspended body as an SRT member cuts the bed sheet. (*Id.* at 0:06:51–0:07:04). The video does not show a "barrage of punches, hits, and kicks," (Second R&R, Doc. 36, #718, 719–20), although it is fair to say that, as two members of the SRT team reported afterward, team members did use "multiple closed fist strikes" to Gallant's upper back area in order to gain his compliance because he was laying on his hands and refusing to "cuff up." (Use of Force Summary Rpt., Doc. 24-2, #248, 250–51).

23

Thus, despite the differences between Gallant's account of the events that day and Defendants', no genuine dispute of material fact exists. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). Accordingly, failing to adopt Gallant's preferred version of the facts did not constitute any error on the part of the Magistrate Judge. As such, Gallant's objection to the Second R&R's application of Rule 56—even if it had risen to the level of specificity required to preserve review—has no merit.

That being said, one of Gallant's specific allegations—that an unknown defendant grabbed Gallant's genitals so hard he defecated on himself (*see* Compl., Doc. 5, #104)—bears a little further discussion. To start, this specific allegation is not clearly contradicted by the video evidence.[2] To be clear, the video evidence by no means suggests that this event *did* occur, but the video does not rule it out sufficiently to meet *Scott*'s "blatantly contradicted" standard. The cluster of corrections officers around Gallant is simply such that the Court cannot clearly ascertain every point at which a corrections officer may have grabbed or struck Gallant in some manner.

---

[2] The R&R treats this point by stating only that "this allegation, without more, does not establish that plaintiff's Eighth Amendment rights were violated." (Second R&R, Doc. 36, #720) (citing *Tuttle v. Carroll Cnty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012)). The Court notes that Gallant's allegation here is somewhat distinguishable from that in *Tuttle* but, given the Court's reasoning, the R&R's ultimate recommendation is not in error.

24

That could pose a problem for summary judgment. As noted, Gallant's Complaint is verified and therefore has the force of an affidavit. Thus, it is properly considered as record evidence at the summary judgment stage. In that verified Complaint, he alleges that "[o]ne member [of the SRT] grab[bed] hold of [his] genitals, causing so much agonizing pain, [that he] defecated [him]self." (*Id.*). The SRT members deny that allegation, (*see* Use of Force Summary Rpt., Doc. 24-2, #289–98), but that just gives rise to a "disputed fact," arguably precluding summary judgment rather than supporting it.

The Court finds, however, that this dispute does not rise to the level of a genuine dispute as to a material fact on Gallant's Eighth Amendment claim. Importantly, the Court is not suggesting that conduct of the type alleged could *never* give rise to an Eighth Amendment claim. To be sure, as the Magistrate Judge observed, Sixth Circuit precedent confirms that mere incidental contact with Gallant's genitals, even if somewhat forceful, is not necessarily sufficient to state an Eighth Amendment claim. *Tuttle*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that "female deputy 'grabbed [Plaintiff's] privates and squeezed them really hard'" during a pat-down search was "simply too subjective and vague to state an Eighth Amendment violation"). But the Court has little doubt that if a corrections officer were to strike or grab an incarcerated person, in the genitals or anywhere else, merely to cause pain, that could give rise to an Eighth Amendment claim absent extenuating circumstances. That latter qualifier is important, though. Imagine, for example, that an incarcerated person attacked a corrections officer, and in attempting to defend

25

himself or herself, the corrections officer punched or kicked the incarcerated person, including in the genital region. Presumably, such conduct would not give rise to an Eighth Amendment claim. In other words, as with all Eighth Amendment claims, the analysis has an objective prong (how severe is the injury?) and a subjective prong (what was the intent in using the force?). *See Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014) (describing the prongs of an Eighth Amendment inquiry).

The Eighth Amendment question here, then, is how Gallant's assertion regarding the grabbing stacks up against the applicable standard. But before getting there, the Court must first consider how Gallant's specific assertion stacks up against the other evidence. This latter inquiry poses some problems for Gallant. Even though his allegation is not blatantly contradicted by the video alone, a similar "blatant contradiction" of Gallant's allegation occurs when the record is reviewed holistically. In other words, the rest of the record evidence contradicts Gallant's allegation to such an overwhelming extent that Gallant has not "present[ed] a sufficient disagreement to require submission to a jury." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Rather, the evidence before the Court is "so one-sided that [Defendants] must prevail as a matter of law" on the Eighth Amendment excessive force claim. *Id.*

The only evidence supporting any kind of traumatic contact of the type Gallant alleges, other than Gallant's assertion in his Complaint, is Gallant's interview (three months post-incident) with Lieutenant Setty. There, Gallant states that he suffered "blunt force trauma to the head, neck, and testicles." (Use of Force Summary Rpt.,

26

Doc. 24-2, #285). But "blunt force trauma" typically refers to a blow or a forceful impact, like a punch (which is what Gallant alleges, and the corrections officers admit, occurred with regard to Gallant's head and neck areas). A person generally would not use that term to describe the "grabbing" that Gallant now alleges in the Complaint. To be fair, though, Gallant may have used the term "blunt force trauma" more broadly, so in and of itself, his arguably inconsistent statement may not be a fatal problem for his Eighth Amendment claim.

But, beyond Gallant's arguably inconsistent statements, several other pieces of record evidence seem to contradict any claim that the corrections officers applied sufficient force of the type Gallant describes to satisfy the Eighth Amendment's objective and subjective prongs. *See Cordell*, 759 F.3d at 580–81. Start with the objective prong. Jesse Mault, a nurse, "followed security staff to the infirmary to further assess … Gallant for any injuries." (Use of Force Summary Rpt., Doc. 24-2, #429). But according to Mault, at no point did Gallant mention to medical staff any alleged testicular injury. (*Id.* #430). To be sure, Gallant attempts to offer an answer for that, saying he was "incapacitated and unconscious" at that time. (*Id.* at #285). The problem with that explanation, though, is that SOCF medical records indicate that, immediately following the incident, Gallant "denie[d] losing consciousness at any time" and that during the SOCF medical exam he was "alert, responsive and uncooperative." (Medical Exam Rpt., Doc. 24-4, #509).

Moreover, further undercutting his specific allegation, the Court has reviewed the medical records from SOCF and Adena Pike Medical Center regarding this

incident, which the Defendants submitted in support of their Motion for Summary Judgment. Those records contain no reference to Gallant having defecated on himself, nor do they reflect any injury to the area at issue—such as bruising, swelling, or redness—which presumably would have occurred had the Defendants grabbed Gallant in the manner and as forcefully as he seems to be claiming. (*See id.* at #509–24). And the SRT "strip searched [] Gallant and dressed him in transportation clothing and restraints for the medical trip," but likewise made no mention of any fecal matter in his clothing. (*See* Use of Force Summary Rpt., Doc. 24-2, #283). Further, Defendants Scott, Parish, Rardin, and Cooper all asserted in interviews that no force, other than the strikes to Gallant's upper-back area and the force used to gain control of his hands for cuffing, was used or witnessed by them during the incident. (*Id.* at #289–98). And Defendants Scott, Parish, Rardin, Cooper, and Ervin all specifically assert that they neither grabbed Gallant's genitals nor witnessed anyone else do so. (*Id.*).

One more observation on the objective prong. In connection with this allegation, Gallant apparently intends that the Court should assume that severe pain (or at least severe pain resulting from genital trauma) can cause involuntary defecation. In other words, he wants the Court to assume that the assertion of involuntary defecation helps to substantiate that an objectively high level of force was applied. But he offers no evidence to support that causal link, and the Court is not aware of any evidence linking involuntary defecation to trauma of this type.

In light of the record, the Court finds that Gallant has failed to show a genuine dispute of material fact exists regarding the objective prong. In reaching that conclusion, the Court notes again that mere incidental contact with Gallant's genitals—if any occurred—is not sufficient to state an Eighth Amendment claim. *Tuttle*, 500 F. App'x 480, 482 (6th Cir. 2012). And, although injury and force are "only imperfectly correlated," *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010), Gallant has failed to offer "significant probative evidence" of any injuries resulting from the alleged contact. *Roberts v. Morvac*, No. 20-5167, 2020 WL 8511715, at *2 (6th Cir. Nov. 6, 2020). Though a plaintiff need not exceed "some arbitrary quantity of injury" to sustain an Eight Amendment claim, *Wilkins*, 559 U.S. at 37, Gallant has come forward with no evidence of injury resulting from the alleged genital contact. And the only available proxy that he offers for the force used—that it was sufficient to cause Gallant to defecate—is unsupported by the record.

That being said, even a relatively small force, if applied for inappropriate reasons, can give rise to an Eighth Amendment claim. But that is where Gallant hits the second problem. He has offered no evidence that would support a jury finding that any alleged "grabbing" of the type he claims, if it occurred, was undertaken "maliciously and sadistically," rather than as part of "a good-faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 40 (noting that whether the force was applied "maliciously and sadistically to cause harm" is the "core judicial inquiry" of Eighth Amendment excessive force claims). In that regard, it bears recalling that any contact with Gallant's genitals, if it happened, occurred while Defendants were

29

attempting to cut him down from a noose and restrain him once upon the ground. *See Cordell*, F.3d 573 at 581 (consideration of the subjective component includes "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and the extent of the threat to the safety of staff and inmates") (internal quotations omitted). Could an officer trying to subdue Gallant while on the ground have attempted to grab or strike Gallant's legs and inadvertently instead grabbed or struck him in his genital region? That is perhaps possible, but something beyond that type of inadvertent contact during a struggle to regain control of him would be required to establish an Eighth Amendment violation.

The Court remains cognizant of its obligation to evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615. But even given that obligation, the Court concludes that—while Gallant's sworn statement perhaps makes it something of a closer call than some cases—no reasonable juror could find for Gallant on this claim considering the scant evidence he has offered in support of it, coupled with the overwhelming weight of record evidence pointing the other way. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581–82 (6th Cir. 1992) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find *by a preponderance of evidence* that the plaintiff is entitled to a verdict.") (emphasis added) (quoting *Liberty Lobby*, 477 U.S. at 252); *see also A. T. v. Everett Sch. Dist.*, 794 F. App'x 601, 603 (9th Cir. 2019) (noting that a "declaration, which runs counter to the overwhelming weight of the evidence, is

30

insufficient to withstand summary judgment"). As the Sixth Circuit has observed, "[a]lthough statements made under the penalty of perjury may serve as an opposing affidavit sufficient to rebut a motion for summary judgment, … 'unsubstantiated, self-serving assertions will not preclude an adequately supported motion for summary judgment from being granted.'" *Chambers v. Hardy*, No. 19-5201, 2019 WL 8138590, at *4 (6th Cir. Oct. 30, 2019) (quoting *Mosquera v. MTI Retreading Co.*, 745 F. App'x 568, 573 (6th Cir. 2018)). For the reasons above, the Court concludes that such assertions are all that Gallant offers here. Accordingly, Defendants are entitled to judgment as a matter of law on this issue.

As he did in his objections to the First R&R, Gallant also seeks in his objections to the Second R&R leave "to amend [his] verified civil complaint." (Obj. to Second R&R, Doc. 37, #736). He further requests an "extension in discovery" to allow him an "adequate amount of time to examine video footage." (*Id.*).

Federal Rule of Civil Procedure 15 provides that leave to amend should be "freely given" when justice so requires. Fed. R. Civ. Pro. 15(a)(2). The Court finds here, though, that justice does not so require. That is particularly true given the existence of the video evidence and Gallant's inability to raise a genuine issue of material fact in light of that evidence. Further confirming that leave to amend is not appropriate here, the Court notes that this matter was originally filed in 2019; allowing an amendment at this late stage would result in undue delay. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing permissible reasons to deny leave to amend, including undue delay, bad faith or dilatory motive, repeated failure to cure

31

deficiencies, and undue prejudice to the opposing party). As such, the Court denies Gallant's request for leave to amend.

The Court also declines to permit an "extension in discovery" for Gallant to continue reviewing the video evidence. (Obj. to Second R&R, Doc. 37, #736). Gallant admits that he "inspected all of the available materials that [the] Defense [] submitted," and was provided "several opportunities to review the numerous video recordings." (Pl. Resp., Doc. 32, #679, 681). Thus, despite his objection that his "time to examine video footage" was "cut short," (Obj. to Second R&R, Doc. 37, #736), it appears from his own filings that he was afforded ample time to consider Defendants' submissions.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** in full the Magistrate's First R&R (Doc. 6) and **ADOPTS IN PART** and **REJECTS IN PART** the Second R&R (Doc. 36). Specifically, given the Court's recognition above that one of Gallant's specific verified allegations perhaps makes this a closer case on summary judgment than some, the Court **REJECTS** the Second R&R's recommendation that the Court certify that any appeal would not be taken in good faith. The Court **OVERRULES** Plaintiff's Objections to both R&Rs (Doc. 14; Doc. 15; Doc. 37). Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 24), and **DENIES** Plaintiff's Motion for Sanctions (Doc. 29), as moot. As a result, the Court **DISMISSES** this action **WITH PREJUDICE**. The Court further **DIRECTS** the

Clerk to **ENTER JUDGMENT** in Defendants' favor, and terminate this matter on the Court's docket.

      **SO ORDERED.**

October 18, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**